

**SO ORDERED.**

**SIGNED this 03 day of July, 2012.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:                                              CASE NO.

JOSEPH W. ABBOTT, JR.,                              12-01166-8-SWH

   DEBTOR

**ORDER**

This matter came before the court on the debtor's motion for turnover of property. A hearing was held on May 23, 2012, in Raleigh, North Carolina. For the reasons that follow, the debtor's motion is denied.

Background

On February 15, 2012, debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. On March 8, 2012, debtor filed a motion for turnover of property seeking the return of his federal tax refund that was intercepted prepetition by the United States Department of Treasury ("U.S. Treasury"). On April 2, 2012, Cumberland County Social Services ("CCSS") filed a response to the debtor's motion.

On July 9, 2008, Laura Baie, the debtor's mother, recertified her household's existing application for food assistance with CCSS through the federal Food and Nutrition Services ("FNS")

program.[1]  FNS is a subdivision of the United States Department of Agriculture ("USDA").  In the application, Ms. Baie listed the debtor, an adult living with her, as a household member.  She received additional benefits because she asserted that they purchased and prepared their food together.  Debtor lived in the household until December 2009.

In 2010, FNS discovered that Ms. Baie had received excess food assistance funds in the amount of $11,755.  According to FNS policy, since debtor was an adult member of a household receiving food assistance, recovery of the excess funds was sought from him.  Notices of the over-issuance were sent to the debtor at Ms. Baie's address in November 2010, and July 2011.  Payments were made towards the debt in October 2011, and November 2011.  No payments were made towards the debt in December 2011, or January 2012.  This sixty-day delinquency automatically triggered action by the Treasury Offset Program ("TOP").  Through this program, the U.S. Treasury intercepted debtor's federal tax refund of $6,129 on February 7, 2012.  At the time of intercept, the remaining FNS balance was $9,608.[2]  After application of the intercepted tax refund, the remaining FNS balance is $2,296.

In his motion for turnover of property, debtor contends that the tax refund should be turned over to the estate because the interception of his tax refund was an invalid setoff.  He alleges there was neither a mutuality of parties nor a mutual debt and obligation between the parties.  CCSS contends that the setoff was valid and therefore the tax refund never became property of the estate.  As such, CCSS argues that the tax refund is not subject to turnover.

---

[1] Now known as the Supplemental Nutrition Assistance Program.

[2] The household received an over-issuance of $11,775, but debtor was only liable at the time of the intercept for $9,608.  See Affidavit of Melinda Seemann, Income Maintenance Program Integrity Supervisor II, Cumberland County Department of Social Services.

Discussion

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(E), which this court may hear and determine.

Under 11 U.S.C. § 542(a), entities in possession of a debtor's property must turn over such property to the trustee. See id. Although "property" is not defined in § 542, courts have defined it to mean "property of the estate." See 5 Collier on Bankruptcy P. 542.02[2], at 542-9 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2010); see also In re Pyatt, 486 F.3d 423, 427 (8th Cir. 2007). An exception to the turnover requirement exists if there was a valid prepetition setoff. See 11 U.S.C. § 542(b). If there was a valid setoff prior to bankruptcy, the property never becomes property of the estate. See, e.g., Lyle v. Santa Clara County Dep't of Child Support Servs., 324 B.R. 128, 131 (Bankr. N.D. Cal. 2005). If it is not property of the estate, then the debtor does not have a right to turnover. See, e.g., id. at 133. Therefore, the crucial determination on a motion for turnover is whether or not the property to be turned over is property of the estate. See id. at 130.

Property does not become property of the estate if there was a valid setoff before the debtor filed for bankruptcy. See, e.g., id. at 131. Section 542(b) outlines an exception to the turnover requirement if there is a valid setoff of debts under § 553. See 11 U.S.C. § 542(b). Section 553(a) of the Bankruptcy Code allows a creditor to "offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a).

Although the Bankruptcy Code does not create its own right of setoff, § 553(a) preserves any non-bankruptcy right of setoff a party might have. See, e.g., In re Shortt, 277 B.R. 683, 688 (Bankr. N.D. Tex. 2002). The four requirements that must be satisfied in order for setoff to be valid, pursuant to § 553, are: (1) the creditor's claim must arise before the commencement of the case; (2) the creditor must have a debt to the debtor that arose before the commencement of the case; (3) the claim and debt must be mutual; and (4) the claim must be valid and enforceable. 11 U.S.C. § 553; see also 5 Collier on Bankruptcy § 553.01[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2010); Shortt, 277 B.R. 683.

Generally, a debtor's claim to a tax refund is property of the estate. See Shortt, 277 B.R. at 687 (citing Internal Revenue Serv. v. Luongo (In re Luongo), 259 F.3d 323, 335 (5th Cir. 2001)). However, the debtor's interest in a refund is contingent upon the statutory determination of what portion of the overpayment remains for the debtor to receive as a refund. See Lyle, 324 B.R. at 131 (citing In re Martin, 167 B.R. 609, 612-13 (Bankr. D. Or. 1994)). If there was a valid right of setoff and the entire tax refund was offset to pay unpaid federal debt, there is no money left over to become property of the estate. See Shortt, 277 B.R. at 687. As the Fifth Circuit reasoned in Luongo, "because the prior unpaid tax liability exceeded the amount of the overpayment, the debtor was not entitled to a refund and the tax refund did not become property of the estate." See id., 259 F.3d at 335.

In this case, TOP's right of setoff was valid and meets all four requirements of § 553. Requirement one is met because the debtor owed a federal agency $9,608 for an over-issuance of food stamps as of at least sixty days before the case. FNS policy § 805.01 states that all adult members of the FNS household are jointly and severally liable for any over-issuances. See N.C.

D.H.H.S. Food and Nutrition Svcs. Manual (last rev. June 1, 2010). According to this policy, the debtor became liable for an over-issuance of FNS funds in the amount of $11,775 when the over-issuance was discovered in 2010. Requirement two is met because the debtor had filed his federal tax return before the commencement of the case, and there was a tax overpayment of $6,129. Requirement three is met because there is a mutuality of parties. FNS is a federal program, and CCSS functions merely as an administrative vehicle through which the federal program operates. Therefore, under the unitary creditor theory,[3] there was mutuality of parties since a federal agency was owed (FNS/USDA) and the taxes were intercepted by a federal agency (U.S. Treasury). Lastly, requirement four is met because the claim is valid and enforceable pursuant to 26 U.S.C. § 6402 and 31 U.S.C. § 3720A.

The TOP derives its non-bankruptcy authority to intercept federal tax refunds to offset prior federal debt from 26 U.S.C. § 6402(d) and 31 U.S.C. § 3720A. The Secretary of the Treasury's ("Secretary") authority to issue a refund derives from 26 U.S.C. § 6402, which says: "[i]n the case of any overpayment, the Secretary . . . shall, subject to subsections (c), (d), (e), and (f)[,] refund any balance to such person." 26 U.S.C. § 6402(a). Under subsection (d), the Secretary must reduce the amount of a person's tax overpayment by the amount of any past-due legally enforceable debt the person owes to a federal agency and notify the person that his tax overpayment has been reduced by the amount necessary to satisfy the debt. See § 6402(d). Section 3720A also requires that the

---

[3] "Under the 'unitary creditor' theory, one governmental agency is permitted to offset its claim against a debt owed to the debtor by a different governmental agency." 5 Collier on Bankruptcy § 553.03[3][b][iii], (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2010); see also In re Britton, 83 B.R. 914, 919 (Bankr. E.D.N.C. 1988).

federal agency give notice to the debtor before requesting setoff with the Secretary.[4] See 31 U.S.C. § 3720A (a)-(b); see also Shortt, 277 B.R. at 689. As the Second Circuit explained in Aetna Casualty & Surety Co. v. LTV Steel Co. (In re Chateaugay Corp.), 94 F.3d 772, 778-79 (2d Cir. 1996): "Section 6402(d) authorizes the Secretary of the Treasury to set off a tax refund against the taxpayer's debt to another Federal agency. Section 3720A provides the procedural framework for that setoff." Id.

Due to the mandatory action required of the Secretary under § 6402(d) and § 3720A, the TOP setoff of the debtor's federal tax refund was valid and enforceable. Because the setoff was valid, the debtor never became entitled to any tax refund. The Secretary was required to reduce the overpayment to zero because the debtor owed FNS in excess of his tax refund. See Lyle, 324 B.R. at 131. Nothing remained to become property of the estate after the Secretary's mandatory reduction of the debtor's tax refund.[5] See, e.g., id. Since the debtor's tax refund never became property of the estate, the U.S. Treasury is under no obligation to turn over the funds.

## Conclusion

For the reasons set forth above, the debtor's motion for turnover of property is **DENIED**.

**SO ORDERED.**

**END OF DOCUMENT**

---

[4] Sending notice to the debtor's last known address is legally adequate notice. See, e.g., Shortt, 277 B.R. at 689. The debtor had adequate notice of the setoff because the notice was sent to his mother's address, which he used on his 2011 tax return.

[5] CCSS makes a similar argument in its supplemental memorandum. CCSS argued that this court did not have jurisdiction to hear this matter under 26 U.S.C. § 6402(g) because the property was not property of the estate, and courts do not have the jurisdiction to hear actions to restrain or review a reduction authorized by 26 U.S.C. § 6402(d). Although the result is the same, the court maintains that the determination of estate property lies solely within its jurisdiction.